******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THE BANK OF NEW YORK MELLON, TRUSTEE *v.* JOHNNY RAY MOORE
## (AC 48062)

Cradle, C. J., and Elgo and Moll, Js.

*Syllabus*

The defendant property owner appealed from the trial court's judgment of foreclosure by sale rendered for the plaintiff. He claimed, inter alia, that the court improperly determined that the plaintiff was the holder of the promissory note at issue. *Held*:

The trial court properly determined that the plaintiff was the holder of the note and, thus, had standing to pursue this action, as the plaintiff's production of the note, endorsed in blank, constituted prima facie evidence that it was the holder of the note prior to the commencement of the action.

This court declined to review the defendant's claim that the plaintiff's mailing of the default notice did not violate an automatic bankruptcy stay that arose in connection with the defendant's bankruptcy petition, as it was inadequately briefed.

This court declined to review the defendant's claim that the plaintiff failed to establish that the default notice had been delivered to him, as it was raised for the first time on appeal and, thus, was unpreserved.

The defendant's claim that the trial court improperly determined that the plaintiff proved the allegations of the operative complaint notwithstanding that a material variance existed between the operative complaint and the proof at trial was unavailing, as the court properly found that there was no material variance between the operative complaint and the proof at trial.

The trial court's calculation of the debt the defendant owed to the plaintiff was not clearly erroneous, as the record demonstrated that the court's finding of the debt owed to the plaintiff factored in certain debt that had been previously forgiven and was reflected in evidence that had been admitted as a full exhibit at trial.

Argued April 23—officially released August 4, 2026

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Cirello, J.*; judgment of foreclosure by sale, from which the defendant appealed to this court. *Affirmed*.

*Johnny Ray Moore*, self-represented, the appellant (defendant).

*Jeffrey M. Knickerbocker*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The self-represented defendant, Johnny Ray Moore, appeals from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, the Bank of New York Mellon, formerly known as the Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-12. On appeal, the defendant claims that the court improperly **(1)** determined that the plaintiff was the holder of the promissory note at issue, **(2)** determined that the plaintiff satisfied a contractual condition precedent to foreclosure requiring it to provide him with a default notice, **(3)** determined that the plaintiff proved the allegations of its operative complaint when, as he maintains, a material variance existed between its operative complaint and the proof at trial, and **(4)** calculated the debt that he owed to the plaintiff.[1] We affirm the judgment of the trial court.

The following procedural history is relevant to our resolution of this appeal. On May 15, 2018, the plaintiff commenced the present action. In its substitute complaint dated July 14, 2021 (operative complaint), the plaintiff alleged in relevant part as follows. By way of a promissory note dated May 26, 2006 (note), the defendant promised to pay the principal sum of $248,000 payable with interest to Countrywide Home Loans, Inc. To secure the note, the defendant executed a mortgage on real property that he owned at 73-75 Baldwin Street in Bridgeport (property) in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. The mortgage deed was recorded on May 31, 2006, on the Bridgeport land records. Thereafter, Mortgage Electronic Registration Systems, Inc., as

---

[1]We address the defendant's claims in a different order than they appear in his appellate brief.

nominee for Countrywide Home Loans, Inc., assigned the mortgage to the plaintiff by an assignment dated February 5, 2010, and recorded on the Bridgeport land records on February 16, 2010. The plaintiff has possession of the note, which has been duly endorsed, and, on or sometime prior to April 1, 2018, "the plaintiff became and at all times since then has been the party entitled to collect the debt evidenced by [the] note and is the party entitled to enforce [the] mortgage." Following a default for nonpayment of the monthly installments of principal and interest that were due on September 1, 2016, and thereafter, the plaintiff exercised its option to declare the entire balance of the note due and payable. A default notice was given to the defendant on November 4, 2016, by both first class and certified mail. On July 30, 2021, the defendant, who was represented by counsel at the time, filed an answer admitting to being the owner of the property, but he otherwise denied the plaintiff's allegations or left it to its proof.

On August 13, 2021, pursuant to Practice Book § 13-19,[2] the plaintiff filed a demand for disclosure of defense. On August 18, 2021, the defendant filed a disclosure of defense, stating that he (1) intended to challenge the plaintiff's standing to prosecute the present action and (2) denied that the note and mortgage were in default.

[2] Practice Book § 13-19 provides: "In any action to foreclose or to discharge any mortgage or lien or to quiet title, or in any action upon any written contract, in which there is an appearance by an attorney for any defendant, the plaintiff may at any time file and serve in accordance with Sections 10-12 through 10-17 a written demand that such attorney present to the court, to become a part of the file in such case, a writing signed by the attorney stating whether he or she has reason to believe and does believe that there exists a bona fide defense to the plaintiff's action and whether such defense will be made, together with a general statement of the nature or substance of such defense. If the defendant fails to disclose a defense within ten days of the filing of such demand in any action to foreclose a mortgage or lien or to quiet title, or in any action upon any written contract, the plaintiff may file a written motion that a default be entered against the defendant by reason of the failure of the defendant to disclose a defense. If no disclosure of defense has been filed, the judicial authority may order judgment upon default to be entered for the plaintiff at the time the motion is heard or thereaf-

The matter was tried to the court, *Cirello*, *J.*, on April 12 and June 26, 2024. The court admitted several exhibits in full into the record and heard testimony from three witnesses: **(1)** Lauren Haberlan, an employee of the plaintiff's loan servicer; **(2)** Richard Bangs, Jr., a certified public accountant; and **(3)** the defendant. The parties subsequently filed posttrial briefs.

On August 22, 2024, the court rendered a judgment of foreclosure by sale, finding the fair market value of the property to be $451,000 and the amount of the debt owed to the plaintiff to be $234,457.39,[3] and setting a sale date of November 16, 2024. On September 3, 2024, the defendant, representing himself,[4] filed a motion for a new trial, which the court denied on September 24, 2024. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the defendant's claim that the trial court improperly determined that the plaintiff was the holder of the note, such that, as he maintains, it lacked standing to pursue the present action. We disagree. The following legal principles and standard of review are relevant to our resolution of this claim. "The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action. . . . After the plaintiff has presented this

---

ter, provided that in either event a separate motion for such judgment has been filed. The motions for default and for judgment upon default may be served and filed simultaneously but shall be separate motions."

[3] Taking into account estimated senior encumbrances on the property, the court found the total debt to be $234,538.18, and further awarded appraisal fees, attorney's fees, and a title search fee.

[4] Following the commencement of the present action, the defendant represented himself until May 24, 2021, when counsel appeared on his behalf. On June 12, 2023, counsel filed a motion to withdraw, which the court granted on October 11, 2023. Thereafter, the defendant represented himself until April 9, 2024, when counsel again appeared on his behalf shortly before trial. On September 3, 2024, the defendant filed an appearance as a self-represented party in lieu of counsel.

prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt. . . . The defendant [must] . . . prove the facts which limit or change the plaintiff's rights." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Pototschnig*, 200 Conn. App. 554, 561–62, 240 A.3d 288, cert. denied, 335 Conn. 977, 241 A.3d 130 (2020). Moreover, "[t]he plaintiff is not required to prove the factual details of the delivery of the note, such as the precise date and manner in which it acquired the note. . . . Case law is clear that [a] holder only has to produce the note to establish [the] presumption [that it is the rightful owner of the underlying debt]. The production of the note establishes [its] case prima facie against the [defendant] and [it] may rest there. . . . It [is] for the defendant to set up and prove the facts [that] limit or change the plaintiff's rights." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 564–65. The "production of the note, endorsed in blank, establishe[s] a rebuttable presumption that [the plaintiff] possessed the note at the time it commenced the foreclosure action." *Hudson City Savings Bank* v. *Hellman*, 196 Conn. App. 836, 857, 231 A.3d 182 (2020).

"A determination regarding standing concerns a question of law over which we exercise plenary review. . . . Furthermore, [a] trial court's determination that a party is the owner and holder of a promissory note is reviewed pursuant to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than

the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *Caliber Home Loans, Inc.* v. *Zeller*, 205 Conn. App. 642, 646–47, 259 A.3d 1, cert. denied, 338 Conn. 914, 259 A.3d 1179 (2021).

The following additional procedural history is relevant to our resolution of the defendant's claim. At trial, the plaintiff offered into evidence a copy of the note, endorsed in blank, which the court admitted as a full exhibit. The plaintiff also produced the original note, which the court and the defendant inspected. In addition, the plaintiff offered into evidence **(1)** a certified copy of the mortgage and **(2)** certified copies of assignments of the mortgage, which the court admitted as full exhibits.

In rendering the foreclosure judgment, the court stated in relevant part as follows: "[At trial] [t]he plaintiff introduced into evidence the original note . . . which was endorsed in blank and a certified copy of the original mortgage. . . . [T]here were several assignments of the note and mortgage demonstrating that the holder of the note and mortgage is the plaintiff . . . ."

The defendant asserts that the court incorrectly determined that the plaintiff was the holder of the note. The defendant maintains that the plaintiff was "required . . . to do more than simply present a copy of the note; it had to provide a clear and unbroken chain of evidence proving that it acquired the note *before* filing the [original] complaint . . . . The plaintiff's evidence regarding when and how it came into possession of the original wet-ink note was equivocal at best." (Citations omitted; emphasis in original.) This claim is untenable.

Contrary to the defendant's assertion, the plaintiff's production of the note, endorsed in blank, constituted prima facie evidence that it was the holder of the note prior to the commencement of the present action. See *Deutsche Bank National Trust Co.* v. *Pototschnig*, supra, 200 Conn. App. 561–62, 564–65; *Hudson City Savings Bank* v. *Hellman*, supra, 196 Conn. App. 857.

The plaintiff was not required to submit any additional evidence regarding its status as the holder of the note. Accordingly, we reject the defendant's claim.[5]

## II

The defendant also claims that the trial court improperly determined that the plaintiff satisfied a contractual condition precedent to foreclosure obligating it to provide him with a default notice. The defendant does not dispute that a default notice was mailed to him;[6] rather, he maintains that **(1)** the court incorrectly determined that the mailing of the default notice did not violate an automatic bankruptcy stay in effect pursuant to 11 U.S.C. § 362 and **(2)** the plaintiff failed to demonstrate that the default notice was delivered to him, which,

[5]The defendant also maintains that "[t]he history of this loan involves a convoluted series of assignments and transfers between multiple entities" and argues that "[t]he assignments of mortgage were ambiguous as to the effective date of the transfer of the . . . note." In rendering the foreclosure judgment, after stating that the plaintiff had produced the note, endorsed in blank, and a certified copy of the mortgage, the court further stated that "there were several assignments of the note and mortgage demonstrating that the holder of the note and mortgage is the plaintiff . . . ." Insofar as the defendant attempts to assert that the court made clearly erroneous findings with respect to the assignments in the record, we deem any such claim to be abandoned as inadequately briefed. See *Randolph* v. *Mambrino*, 216 Conn. App. 126, 151–52, 284 A.3d 645 (2022). Assuming, without deciding, that the court made such clearly erroneous findings, we deem them to be harmless as to the issue of the plaintiff's status as the holder of the note. See *Gainty* v. *Infantino*, 238 Conn. App. 780, 794–95 n.15,      A.3d      (2026) (presumed clearly erroneous finding was harmless). As we have concluded, the court's determination that the plaintiff was the holder of the note was proper in light of its production of the note, endorsed in blank, which the court expressly recognized in its decision.

[6]At trial, the court admitted into evidence an exhibit submitted by the plaintiff comprising, inter alia, four separate, substantially identical default notices, each dated November 4, 2016. At trial, Haberlan testified that two of the default notices were addressed to the property, with one notice sent by certified mail and the other notice sent by first class mail, whereas the other two default notices were addressed to the defendant's personal address, with one notice sent by certified mail and the other notice sent by first class mail. In the interest of simplicity, we refer to a single default notice without distinguishing among the several default notices.

he posits, was required pursuant to the terms of the mortgage deed. For the reasons that follow, we decline to review these claims.

Preliminarily, we set forth the following relevant legal principles. "[T]o establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure . . . have been satisfied." (Internal quotation marks omitted.) *U.S. Bank Trust, National Assn.* v. *Shuey*, 232 Conn. App. 618, 629, 338 A.3d 353, cert. denied, 353 Conn. 903, 341 A.3d 957 (2025). "[W]hen the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Fitzpatrick*, 190 Conn. App. 231, 239, 210 A.3d 88, cert. denied, 332 Conn. 912, 209 A.3d 1232 (2019).

The following undisputed facts, as found by the court or as gleaned from the record, and procedural history are relevant to our discussion of the defendant's claims. Section 7 (C) of the note, which was admitted as a full exhibit at trial, provides in relevant part that, "[i]f [the defendant is] in default, the [n]ote [h]older may send [the defendant] a written notice telling [the defendant] that if [the defendant does] not pay the overdue amount by a certain date, the [n]ote [h]older may require [the defendant] to pay immediately the full amount of [p]rincipal which has not been paid and all the interest that [the defendant] owe[s] on that amount. . . ." Section 8 of the note provides in relevant part that, "[u]nless applicable law requires a different method, any notice that must be given to [the defendant] under th[e] [n]ote will be given by delivering it or by mailing it by first class mail to [the defendant] at the [p]roperty [a]ddress . . . or at a different address if [the defendant] give[s] the [n]ote [h]older a notice of [the defendant's] different address. . . ." Section 15 of the mortgage deed, which was admitted as a full exhibit

at trial, provides in relevant part that "[a]ll notices given by [the defendant] or [the] [l]ender in connection with this [s]ecurity [i]nstrument must be in writing. Any notice to [the defendant] in connection with this [s]ecurity [i]nstrument shall be deemed to have been given to [the defendant] when mailed by first class mail or when actually delivered to [the defendant's] notice address if sent by other means. . . ." Section 22 of the mortgage deed provides in relevant part that "[the] [l]ender shall give notice to [the defendant] prior to acceleration following [the defendant's] breach of any covenant or agreement in this [s]ecurity [i]nstrument . . . ."

On August 24, 2016, the defendant filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut. On November 4, 2016, the default notice was mailed to the defendant by both certified and first class mail.

In his posttrial brief, the defendant argued that the mailing of the default notice violated the automatic bankruptcy stay of 11 U.S.C. § 362 in effect attendant to his bankruptcy petition filed on August 24, 2016, thereby rendering the default notice void and precluding the plaintiff from satisfying its burden to demonstrate that it had complied with all contractual conditions precedent to foreclosure. In rendering the foreclosure judgment, the court rejected this argument and concluded that the plaintiff had established that it satisfied all contractual conditions precedent to foreclosure.

A

The defendant contends that the court incorrectly determined that the mailing of the default notice did not violate the automatic bankruptcy stay of 11 U.S.C. § 362 that arose in connection with his bankruptcy petition filed on August 24, 2016. We decline to review this claim because we deem it to be abandoned as inadequately briefed.

"[A]lthough self-represented parties are not excused from complying with relevant rules of procedural and

substantive law, [i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Thus, like the trial court, [this court] will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law . . . and [w]e repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Citations omitted; internal quotation marks omitted.) *Randolph* v. *Mambrino*, 216 Conn. App. 126, 151–52, 284 A.3d 645 (2022).

In the defendant's appellate brief, the entire substance of his claim concerning the automatic bankruptcy stay is delineated in the following three sentences: "On November 4, 2016, while the automatic [bankruptcy] stay was in full force and effect, the plaintiff's servicer mailed a notice of default to the defendant. The issuance of this notice was a clear, unequivocal violation of the automatic [bankruptcy] stay. A notice of default, which declares a breach and threatens acceleration of the entire debt, is undeniably an 'act to collect, assess, or recover a claim'[7]

---

[7]Although the defendant does not cite the precise provision, the source of the quoted language is 11 U.S.C. § 362 (a) (6).

against the debtor that arose before the bankruptcy filing.”[8] (Footnote added.) We deem these three sentences collectively to constitute abstract assertions rather than substantive legal analysis. Accordingly, we conclude that this claim has been abandoned as inadequately briefed, and, therefore, we decline to review it.

B

The defendant also contends that the plaintiff failed to establish that the default notice was delivered to him, which, he asserts, was required pursuant to the terms of the mortgage deed. In addition to addressing the merits of this claim, the plaintiff argues that we should not review it because the defendant failed to preserve it. We conclude that the defendant’s claim is unpreserved, and, therefore, we decline to review it.

“It is fundamental that claims of error must be distinctly raised and decided in the trial court. As a result, Connecticut appellate courts will not address issues not decided by the trial court. . . . Similarly, Practice Book § 60-5 provides in relevant part that our appellate courts shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . As our Supreme Court . . . [has] observed, [t]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Thus, the requirement of . . . § 60-5 that the claim be raised distinctly means that it must be so stated as to bring to the attention of the [trial] court the precise matter on which its decision is being asked.” (Internal quotation marks omitted.) *Doyle Group* v. *Alaskans for Cuddy*, 164 Conn. App. 209, 225 n.9, 137 A.3d 809, cert. denied, 321 Conn. 924, 138 A.3d

---

[8] The defendant’s appellate brief contains paragraphs preceding and following these three sentences; however, those additional paragraphs do not provide any substantive legal analysis supporting the defendant’s claim that the mailing of the default notice violated the automatic bankruptcy stay.

284 (2016). "To merit consideration, an issue must be distinctly raised before the trial court, not just briefly suggested . . . ." (Internal quotation marks omitted.) *Idlibi* v. *Hartford Courant Co.*, 350 Conn. 557, 567, 325 A.3d 1048 (2024).

Our examination of the record reveals that the defendant never distinctly raised before the court the issue of whether the default notice was delivered to him.[9] The defendant's sole claim concerning the default notice was that it was mailed in violation of an automatic bankruptcy stay in effect, thereby rendering the default notice void. See part II A of this opinion. Thus, we decline to review the defendant's claim, raised for the first time on appeal, grounded on the purported lack of delivery of the default notice.[10]

## III

The defendant also claims that the trial court improperly determined that the plaintiff proved the allegations

[9]At trial, the defendant testified that he did not receive the default notice; however, he did not raise any argument predicated on the purported lack of delivery of the default notice in his posttrial brief. In rendering the foreclosure judgment, the court stated that, "[o]n November 4, 2016, the defendant was sent a default notice via certified and regular mail . . . . The defendant claims no notice of default was ever received." Later, in addressing the defendant's arguments raised in his posttrial brief, the court rejected the defendant's contention that the default notice was void because it was mailed while an automatic bankruptcy stay was in effect. The court further stated that "[i]t does not appear that the defendant is making an argument [that] the notice of default was defective in any other ways." Thus, the court did not discern the defendant to be raising an argument predicated on the purported lack of delivery of the default notice.

[10]Even assuming that the defendant's claim were preserved, we conclude that it is untenable. The defendant relies on the mortgage deed to contend that the plaintiff was required to prove that the default notice had "be[en] *delivered* . . . not merely mailed." (Emphasis in original.) Pursuant to the terms of section 15 of the mortgage deed, however, the mailing of the default notice by first class mail relieved the plaintiff of the burden to prove delivery of the default notice. See *Aurora Loan Services, LLC* v. *Condron*, 181 Conn. App. 248, 264, 186 A.3d 708 (2018) (construing language identical to language in section 15 of mortgage deed in present action to mean that "a default notice sent by

of the operative complaint notwithstanding, as he posits, that a material variance existed between the operative complaint and the proof at trial. We are not persuaded.[11]

The following additional undisputed facts, as found by the court or as gleaned from the record, and procedural history are relevant to our resolution of this claim. On July 15, 2009, the defendant executed a loan modification with Bank of America, a prior holder of the note, resulting in a modified principal balance of $264,013.19 (2009 loan modification). On July 12, 2013, the defendant executed a second loan modification with Bank of America, which resulted in the forgiveness of approximately $322,086, leaving a modified principal

first class mail is entitled to a presumption of receipt, while notices sent by other means are not entitled to such a presumption [such that] proof of actual delivery is required by the mortgage deed when the notice is sent by other means"). In his posttrial brief, the defendant conceded that the plaintiff produced evidence at trial proving that the default notice was mailed to him by first class mail. Moreover, in rendering the foreclosure judgment, the court found that a default notice was mailed to the defendant by both "certified and regular [that is, first class] mail," which finding the defendant does not challenge on appeal. Thus, the defendant's claim fails on the merits.

[11]We note that the defendant ostensibly waived this claim by failing to object to the admissibility of the evidence at issue at trial, namely, two loan modifications. See *Arroyo* v. *University of Connecticut Health Center*, 175 Conn. App. 493, 507, 167 A.3d 1112 ("[O]ur Supreme Court has stated that [t]he proper way to attack a variance between pleadings and proof is by objection at the trial to the admissibility of that evidence which varies from the pleadings, and failure to do so at the trial constitutes a waiver of any objection to such variance. . . . Where a case has been litigated wholly upon the merits a party is not permitted after judgment to take advantage of defects in procedure which, had attention been called to them at the trial, could readily have been amended." (Internal quotation marks omitted.)), cert. denied, 327 Conn. 973, 174 A.3d 192 (2017); see also *Cellu Tissue Corp.* v. *Blake Equipment Co.*, 41 Conn. App. 413, 419 n.2, 676 A.2d 405 (1996) ("[T]he defendant has not shown that it objected to any evidence at trial that may have varied from the allegations of the complaint. The appeal process should not be utilized to correct pleading deficiencies which could have been remedied in the trial court. . . . The failure to object to the [evidence] constituted a waiver of any variance between the pleadings and the proof." (Citation omitted; internal quotation marks omitted.)). Nevertheless, because the court adjudicated this claim and the plaintiff does not argue that the defendant has waived it, we address this claim on the merits.

balance of $90,154.45 (2013 loan modification). Both loan modifications contained substantially identical prefatory language providing that they "amend[ed]" and "supplement[ed]" the note and mortgage. In the operative complaint, the plaintiff alleged that the defendant had defaulted on the note and mortgage; however, the operative complaint was silent as to the loan modifications. At trial, the plaintiff offered into evidence copies of the loan modifications, which the court admitted as full exhibits without objection.[12]

In his posttrial brief, the defendant argued that the plaintiff alleged in the operative complaint that he defaulted on the note, rather than the note as modified by the loan modifications, such that the plaintiff pleaded "a legally insufficient cause of action . . . ." In its posttrial reply brief, the plaintiff argued that it pleaded a legally sufficient cause of action.

In rendering the foreclosure judgment, the court determined that the plaintiff proved the allegations of the operative complaint. The court stated that the loan modifications (1) were admitted into evidence without objection from the defendant, who "was well aware of the evidence of [the loan] modifications prior to trial," and (2) "made reference to and incorporated the . . . note and mortgage . . . ." Thus, the court determined that "there was not a 'material variance between the allegations [in the operative complaint] and the proof' as required in Practice Book § 10-62"[13] and the lack of allegations

___

[12] The defendant raised an issue regarding missing pages vis-à-vis the 2009 loan modification, which issue was resolved. Following the resolution of that issue, the defendant did not object to the admission of the 2009 loan modification into evidence.

[13] Practice Book § 10-62 provides: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. If such allegation was made without reasonable excuse, or if the adverse party was actually misled thereby to his or her prejudice in maintaining the action or defense upon the merits, or if such amendment requires postponement of the trial or additional expense to the adverse party and this is shown to the satisfaction of the judicial authority, such amendment shall be made only upon payment of costs or upon such terms as the judicial authority may deem

regarding the loan modifications in the operative complaint was not fatal to the plaintiff's claims.

The defendant contends that the court improperly determined that the plaintiff proved the allegations of the operative complaint. The defendant asserts that "[a] plaintiff's proof at trial must conform to its pleadings. The plaintiff, having pleaded a breach of the note, could not then prove its case by referencing a default under a different, unpleaded contract" that, the defendant posits, superseded the note. The defendant maintains that the court "overlook[ed] this fatal variance between the pleadings and the operative facts . . . ." We are not persuaded.

"The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . The complaint is required only to fairly put the defendant on notice of the claims against him. . . . [T]he interpretation of pleadings is always a question of law for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Lyons* v. *Nichols*, 63 Conn. App. 761, 764–65, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001).

"A variance is a departure of the proof from the facts as alleged. Not every variance, however, is a fatal one since immaterial variances are disregarded under our

proper; but in any other case, without costs. Immaterial variances shall be wholly disregarded."

practice. Practice Book § [10-62] . . . . Only material variances, those which disclose a departure from the allegations in some matter essential to the charge or claim, warrant the reversal of a judgment. . . . A variance is material only if the defendant is prejudiced by it. . . . *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 275–76, 659 A.2d 148 (1995). To be material, a variance must relate to the cause of action alleged. *LaFaive* v. *DiLoreto*, 2 Conn. App. 58, 61, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984). [A] variance which alters the basic nature of a complainant's cause of action cannot be condoned. . . . *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 63, 717 A.2d 77 (1998). The critical inquiry is whether the opposing party was on notice of the variance. See *Tedesco* v. *Stamford*, 215 Conn. 450, 463, 576 A.2d 1273 (1990) (where defendant had sufficient notice of claims not specifically alleged, no material variance between pleadings and proof), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992); see also *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, [230 Conn. 486, 496, 646 A.2d 1289 (1994)] (pleadings must provide sufficient notice of facts claimed and issues to be tried and not surprise or prejudice opposing party)." (Internal quotation marks omitted.) *Michalski* v. *Hinz*, 100 Conn. App. 389, 395–96, 918 A.2d 964 (2007); see also *Lyons* v. *Nichols*, supra, 63 Conn. App. 766 ("an otherwise valid judgment will not be invalidated if a variance does not change the theory of the cause of action and if the party complaining of the variance was, at all times, in a position to know the true state of the facts" (internal quotation marks omitted)).

We agree with the court that there was no material variance between the operative complaint and the proof at trial. The loan modifications contained prefatory language providing that they "amend[ed] and supplement[ed]" the note and mortgage. Thus, we are not convinced by the defendant's argument that the evidence at trial of the loan modifications materially departed from the operative complaint's allegations regarding the note and

mortgage. Moreover, the defendant failed to demonstrate surprise or prejudice when, as the court determined, **(1)** he did not object to the admission of the loan modifications as full exhibits at trial and **(2)** he "was well aware of the evidence of [the loan] modifications prior to trial."[14] Thus, the defendant's claim fails.

### IV

The defendant's final claim is that the trial court improperly calculated the debt that he owed to the plaintiff. We disagree.

Whether the court's debt calculation was proper is a question of fact; *Nikola* v. *2938 Fairfield, LLC*, 147 Conn. App. 681, 687–88, 83 A.3d 1170 (2014); subject to the clearly erroneous standard of review. See *Caliber Home Loans, Inc.* v. *Zeller*, supra, 205 Conn. App. 646–47.

The following additional undisputed facts, as found by the court or as gleaned from the record, and procedural history are relevant to our resolution of this claim. Following the 2013 loan modification, which forgave approximately $322,086 and left a modified principal balance of $90,154.45; see part III of this opinion; Bank of America issued an Internal Revenue Service **(IRS)** form 1099-C for the tax year 2013 **(2013 IRS form 1099-C)** reflecting that, by agreement, $322,086 of the defendant's debt had been discharged. In addition, for the tax year 2015, Bank of America issued an IRS form 1099-C **(2015 IRS form 1099-C)** reflecting that, as a result of certain bankruptcy proceedings, $87,788.97 of the defendant's debt had been discharged. The court

---

[14]With respect to the court's determination that the defendant "was well aware of the evidence of [the loan] modifications prior to trial," the court aptly observed that one of the defendant's arguments was that his entire debt had been discharged as evidenced by a certain tax form issued after the 2013 loan modification. See part IV of this opinion. Moreover, in a memorandum of law that he filed in opposition to a motion for summary judgment as to liability only filed by the plaintiff prior to trial, as well as in a pretrial brief that he filed, the defendant raised arguments predicated on the plaintiff's failure to plead allegations in the operative complaint concerning the loan modifications.

admitted both IRS forms 1099-C as full exhibits at trial. The court also admitted the following two exhibits at trial: (1) a document reflecting the defendant's payment history (payment history); and (2) an affidavit of debt submitted by the plaintiff.

In his posttrial brief, the defendant argued that the two IRS forms 1099-C demonstrated that his entire debt under the note had been discharged. In its posttrial reply brief, the plaintiff argued that the two IRS forms 1099-C were issued in compliance with federal regulations and did not prove that the defendant no longer owed any debt to it.

In rendering the foreclosure judgment, the court determined that the two IRS forms 1099-C did not constitute evidence that the entirety of the defendant's debt had been discharged. The court further stated that the "substantial and credible evidence showed that a portion of the defendant's debt was discharged as a result of the [2013 loan] modification and [a] bankruptcy, but that a certain amount of debt remained which was secured by the note and mortgage." The court ultimately found that the debt owed to the plaintiff was $234,457.39.

The defendant claims that the court, in its debt calculation, improperly failed to account for the $322,086 in debt that had been discharged as reflected in the 2013 IRS form 1099-C.[15] The defendant maintains that the court did not give any substantive weight to the 2013 IRS form 1099-C but, instead, "adopt[ed] the plaintiff's debt affidavit wholesale, which improperly included the discharged amount." We are not persuaded.

Contrary to the defendant's contention, the record demonstrates that the approximately $322,086 forgiven in connection with the 2013 loan modification and reflected in the 2013 IRS form 1099-C was encompassed in the court's calculation of the debt owed to the plaintiff. The defendant's payment history reflected that,

---

[15]The defendant does not raise a claim on appeal predicated on the 2015 IRS form 1099-C, such that we need not discuss it further.

in July 2013, the principal balance was reduced from $412,240.46 to $90,154.45, which coincided with the defendant's execution of the 2013 loan modification. The defendant's payment history further reflected that, as of the end of August 2016, the remaining principal balance was $86,892.69. The plaintiff's affidavit of debt **(1)** likewise reflected that the remaining principal balance was $86,892.69 and **(2)** calculated the debt owed to the plaintiff to be $234,457.39, comprising the sum of the $86,892.69 in remaining principal plus, inter alia, interest and escrow advances. In other words, the record demonstrates that the court's finding that the debt owed to the plaintiff was $234,457.39 factored in the approximately $322,086 in debt previously forgiven and reflected in the 2013 IRS form 1099-C. Accordingly, we conclude that the court's debt calculation was not clearly erroneous.

The judgment is affirmed and the case is remanded for further proceedings according to law. See *Wahba* v. *JPMorgan Chase Bank, N.A.*, 349 Conn. 483, 316 A.3d 338 (2024).

In this opinion the other judges concurred.